MARGARET S. ANDERSON v. ATLANTIC COAST LINE
RAILROAD COMPANY.

(Filed 12 March, 1913.)

1. Carriers 'of Passengers — Regulations — Operation of Trains —
Depot Buildings—Safe Ingress.

A railroad company may make reasonable regulations as to
the running of its trains, and may determine the part of the
train to be nearest the station at stops, having due regard for
the convenience of the traveling public, and providing safe walk-
ways from the place of egress to the station.

2. Carriers of Passengers—Feeble Passengers—Knowledge of Car-
rier—Depot Buildings—Negligence—Compensatory Damages.

Where a railroad company has been made aware of the feeble
condition of a female passenger who had just left a sanatorium
to take a long journey by rail to her home, and has been notified
that the passenger should be taken good care of, and the train,
nearly two hours late, reached its destination at 2:15 o'clock at
night in inclement weather, and the employee on the train put
the passenger off on the side of the train opposite the depot
building, so that the passenger insisted she was at the wrong
station, when the employee assisted her to disembark on the
other side of the train, and left her exposed where there were
no provisions made for passengers, 185 yards from the passenger
shed, where her son, who had gone to meet her, afterwards found
her weak, cold, and shivering, it is *Held*, some evidence of sub-
stantial damages to be submitted to the jury.

3. Negligence—Definition.

Negligence is the failure to exercise ordinary care, which de-
pends upon the circumstances of the case, and is ordinarily
a question for the jury.

4. Damages — Fright — Physical Injury—Instructions—Appeal and
Error.

Mere fright is not considered in law as an element of dam-
ages; and where there is evidence tending to show that a rail-
road company negligently put a feeble passenger, at night, off of
its train on the opposite side from the depot, causing fright and
sickness from the exposure, an instruction that the jury might
award compensatory damages for fright, disconnected from any
physical injury, is reversible error.

APPEAL by defendant from *Daniels, J.,* at November Term,
1912, of WILSON.

This is an action to recover damages caused, as alleged, by the negligence of the defendant.

The plaintiff left the sanatorium of Dr. Starns, in Atlanta, Georgia, at 7:30 o'clock on the morning of 23 February, 1911, for her home in Wilson, North Carolina. She had been a patient in the sanatorium for seven weeks, and was feeble and delicate. She was accompanied to the train at Atlanta by a nurse, who told the conductor that the plaintiff was from the sanatorium and had been very sick. The defendant's track does not run into Atlanta, and the plaintiff did not become a passenger on the defendant's train until she reached Augusta, Georgia.

The plaintiff offered evidence tending to prove that the conductor from Atlanta put her on the defendant's train in Augusta and told the conductor on the defendant's train that the plaintiff had been very sick in the hospital and had a long trip to take and he wanted him to take good care of plaintiff; not to let her lift anything or be exposed; and the conductor on defendant's train said he would take care of her; that when the plaintiff left Atlanta the weather was pleasant; that when she arrived at Wilson about 2:30 o'clock the following morning, the weather had turned very cold and the ground was damp and cold, and that her train was due to arrive at Wilson, North Carolina, at 12:50 A. M., but did not actually arrive until 2:16 A. M.; that the defendant company has a shed at the passenger station in Wilson, which extends from Nash Street to Green Street, a distance of about 210 yards, and that the passenger station proper is about 55 yards from the center of Nash Street; that upon the arrival of the train at Wilson the Pullman porter put the plaintiff off on the east side of the track, or the side opposite from the one on which the passenger station is located; that the plaintiff begged the porter not to put her off there, and finally convinced the porter that she was either in some strange town or on the wrong side of the track, and he then assisted her to disembark on the west side of the track or on the same side that the passenger station is on, but 185 yards from the end of the shed on Nash Street; that some time after the plaintiff was placed on the west side of the track, her son, who had

gone to meet her at the station, found her weak, cold, and shivering; that he assisted her to the passenger station and into the waiting-room, where he wrapped her up, after she had warmed, and then placed her in a top buggy, which had curtains, a storm cloth and a blizzard storm cloth like the front of an automobile with isinglass in it, and also a heavy lap-robe, and he then took her to her home, which required something like ten minutes; that when the plaintiff reached her home and was met by her husband, she began to cry and immediately went to bed, and the next night after she reached home she was taken with sneezing and coughing, and the second night she had a rise of fever; that she grew worse for several days and became unconscious, and had a marked case of bronchitis, and stimulants had to be given to her to keep her heart from stopping; that she had paroxysms of coughing, after which she would fall back in an unconscious condition until more stimulants could be given to rally her pulse.

There was no evidence that the plaintiff was injured by reason of defects in the walkway.

There was other evidence on the part of the plaintiff tending to prove that her sickness was caused by exposure in going from the west side of the train to the station, but no evidence of any physical injury by being put off on the east side of the track.

His Honor charged the jury, among other things, as follows:

1. "Now, if you have found that the defendant was negligent in putting her off or assisting her to alight at that place, and that it was cold and she was chilled and frightened by reason of that, as a proximate cause of that, then you would answer the first issue 'Yes,' without regard to whether or not her sickness was brought on by it as a proximate consequence of the defendant's negligence, because, if she was frightened or suffered inconvenience even, while there upon the ground, and that was caused proximately by the negligent act of the defendant, she would be entitled to recover, and you would answer this first issue 'Yes,' because that would be an injury, if you find that to be so—to be inconvenienced or annoyed or frightened would be an injury, though, of course, not as great an injury as the other allegation of her protracted illness." Defendant excepted.

2. "As I have stated to you before, gentlemen, any fright or inconvenience or suffering that she suffered on the east side of the track, which was immediately and proximately caused by the defendant's negligence, if there was such negligence—and it is admitted that there was negligence there—she would be entitled to a reasonable compensation for that, whatever was proximately caused by the negligence of the defendant." Defendant excepted.

There was a motion for judgment of nonsuit, which was overruled, and defendant excepted. Verdict and judgment for plaintiff, and defendant excepted and appealed.

*Barnes & Dickinson and Woodard & Hassell for plaintiff.*
*F. S. Spruill for defendant.*

ALLEN, J. If the plaintiff had been well and strong, or if there was no evidence that the defendant had notice of her feeble condition, we would hold that there could be no recovery, except of nominal damages for putting her off on the wrong side of the train, because under such circumstances the evidence in this case would fail to show a breach of duty.

There is, however, evidence that she was feeble; that the defendant knew of this fact, and that she suffered by reason of exposure on the west side of the train, which might have been averted.

Negligence is the failure to exercise ordinary care; but what is ordinary care is dependent upon the circumstances, and is usually a question of fact for the decision of a jury.

The carrier may make reasonable regulations as to the running of its trains, and may determine the part of the train to be nearest the station at stops, having a due regard for the convenience of the traveling public, and providing reasonably safe walkways from the place of egress to the station, and it would seriously interfere with the operation of trains, the maintenance of schedules, and the right of passengers to be transported without unnecessary delay, to impose the duty of stopping each car so that all passengers could alight nearest to the station.

Nor is the carrier required to furnish a nurse or attendant for a sick passenger; but as was said by *Justice Brown* in *Clark*

v. *Traction Co.*, 138 N. C., 82: "The authorities are all to the effect that a degree of attention beyond that due to ordinary passengers should be bestowed on those affected with a disability by which the hazards of travel are increased. The sick, the lame, children, and aged persons are entitled to more care and attention from those in charge of a car than those in full possession of their strength and faculties." *Croom v. R. R.*, 52 Minn., 296; *Sheridan v. R. R.*, 36 N. Y., 39; *R. R. v. Powell,* 40 Ind., 37.

Applying this principle, and considering all the circumstances, we are of opinion there was some evidence of negligence in putting the plaintiff off on the west side of the track, and that this was the cause of her subsequent sickness.

As the question must be considered by another jury, because of error hereafter pointed out, we forbear to discuss it further, except to say that the jury should be instructed, under the evidence as now presented, that they cannot allow any damages on account of sickness, unless they find that the exposure from the time she left the train on the west side until she reached the waiting-room caused it.

The charge on the issue of damages is erroneous.

The damages are awarded as one sum, and his Honor did not confine the recovery for wrongfully putting her off on the east side to nominal damages. On the contrary, he told the jury they might award compensatory damages for fright caused on the east side of the train, disconnected from any physical injury, and this is material, because it may be the jury were not satisfied that the exposure after the plaintiff left the train on the west side caused her to be sick, and that the damages awarded were for fright alone.

The statement in *Kimberly v. Howland,* 143 N. C., 403, that, "All the courts agree that mere fright, unaccompanied by physical injury, cannot be considered as an element of damage," is fully sustained by the authorities.

There must, therefore, be a new trial for the error pointed out.

New trial.

MINCEY *v.* R. R.

JUSTICE WALKER and JUSTICE BROWN, while consenting to a new trial, in deference to the views of the majority of the Court, are of opinion that there is no evidence of negligence upon the part of the defendant, and that the motion to nonsuit should have been sustained.