HAZEL MITCHELL, Appellee, v. DES MOINES CITY RAILWAY CO., Appellant.

**Street railways:** INJURY TO PASSENGER: NEGLIGENCE: EVIDENCE. The
1   jury is the sole judge of the creditability of witnesses and the weight to be given their testimony; and where there is more than a scintilla of evidence to sustain their verdict the appellate court will not interfere. In the instant case the evidence was sufficient to authorize submission of the question of whether defendant's street car was started without signal or warning before plaintiff was able to alight, thus causing her injury, and to support a verdict for plaintiff on that issue.

**Same:** ASSISTANCE OF PASSENGER: NEGLIGENCE: EVIDENCE. A street car
2   company owes no general duty to the public to assist passengers to enter and alight from its cars; this duty arises when there is some unusual difficulty, danger or condition attending the act. But where the carrier accepts a passenger who is crippled or disabled it is bound to use reasonable care to secure the safety of such passenger while entering and alighting from its cars, and whether this duty requires the conductor to assist such passenger in alighting depends on the circumstances of the particular case. Under the evidence in this case the question of whether plaintiff's safety required assistance in alighting, and whether her danger was reasonably apparent to a reasonably careful person on whom such duty rested, was for the jury.

**Same:** ASSISTANCE OF PASSENGER: NOTICE OF INFIRMITY: INSTRUCTION.
3   Where it appeared from the undisputed evidence that the conductor of the street car knew of plaintiff's crippled condition, the duty of

assisting her to alight arose immediately when it became reasonably apparent to him that assistance was reasonably necessary; and it was therefore unnecessary for the court to instruct that to authorize recovery plaintiff's infirmity must have been apparent, or defendant must have had notice thereof.

Same: NEGLIGENCE: INSTRUCTIONS. Where the court, after reciting the grounds of negligence charged, told the jury to consider no other question or charge of negligence, and that plaintiff could not recover unless they found one or both of these charges of negligence established by a preponderance of the evidence, and the further instruction that defendant would be chargeable with any negligence of its employees, if it appeared they were negligent in the things complained of and especially referred to in the instructions, when read together as they must be, sufficiently limited the jury's consideration to the acts charged in the petition.

Same: INSTRUCTIONS. Where a street car was started while a crippled passenger was attempting to alight, in the immediate presence and view of the conductor, the company was liable for injury resulting to her from the sudden start, although such passenger had already been allowed a reasonable time to alight before the car started. The instruction in this case announcing the above rule, when read and understood in the light of the evidence in the particular case, as it must be, was proper.

Same: EVIDENCE. Where a witness had been permitted to testify generally as to the ability of plaintiff to control and handle her person in alighting from street cars, refusal to permit him to further state whether in approaching a car she was apparently unsafe, and whether she seemed to have perfect control of herself and able to get on and off street cars without hesitation or otherwise, was proper; as the inquiry called for his observations concerning her movements and ability to help herself at other times and places and under other conditions.

Same: EVIDENCE. Refusal to permit a street car conductor to state whether in his experience it is not difficult to aid one in entering or alighting from a car, who is attempting to get off himself by the aid of crutches, and if so why and in what respect, was proper; as the matter was one of common observation and not the subject of expert testimony. And even if assistance under such circumstances is difficult that fact would not excuse a failure to assist, if from the nature of the case it would appear to a reasonably prudent man that assistance was needed.

New trial: BIAS OF JUROR: EVIDENCE. Where there was a clear conflict

8   in the evidence as to whether a juror was so prejudiced as to disqualify him, the order of the trial court denying a new trial on that ground will not be disturbed on appeal.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT, Judge.

SATURDAY, APRIL 12, 1913.

ACTION  to  recover  damages  for  personal  injury.— *Affirmed.*

*Guernsey, Parker & Miller,* for appellant.

*Thos. A. Cheshire,* for appellee.

GAYNOR, J.—Plaintiff claims that on or about the 21st day of June, 1911, she was a passenger on one of defendant's cars; that the car on which she was riding stopped at Ingersoll avenue and Twenty-Eighth street for plaintiff to alight; that, while she was in the act of alighting, the car was started without any warning to her or signal from any person to start; that she was thrown to the ground, her left ankle severely injured, and the ligaments, muscles, and nerves surrounding the ankle joint were torn, strained, and broken, and her body severely bruised, and she also sustained a severe shock to her nervous system. Plaintiff further states that, when she was five years of age, she received an injury to her right leg; that, as a result of this injury she has ever since been compelled to use crutches; that when she stands her right foot is suspended while so standing or walking; that, at the time she attempted to leave the car, she was using her crutches, and was standing on the rear platform of the car resting on her left foot; that she placed her crutches on the first step down, and, while she was in this position, the car suddenly moved forward and threw her to the ground with great force

and violence; that, at the time she was attempting to alight, the conductor on the car was standing close beside her on the rear platform and did not warn her that the car was about to start, and did not assist her to alight, or offer to assist her; that the conductor at the time saw her crippled condition, and was fully aware of the fact that she was so crippled.

Upon the facts so stated, the plaintiff alleges that the defendant was negligent: First. In that the motorman caused the car on which she was riding to start suddenly, after it had stopped for plaintiff to alight, without any signal to start the car, and without any warning to the plaintiff that it would start before she could alight. Second. That the defendant was negligent in that the conductor, knowing her crippled condition, did not aid and assist her in alighting from the car. The defendant interposed a general denial of these charges. Upon the issues so tendered, the cause was tried to a jury and a verdict returned by the jury in favor of the plaintiff. That thereupon the defendant filed a motion for a new trial which, being submitted to the court, was overruled, and from the ruling of the court, upon the motion and from the judgment entered upon the verdict, defendant appeals.

It appears from the evidence in this case that, at the time plaintiff was injured, she was eighteen years of age; that, when she was about five years of age, she was knocked down and run over by a party riding a bicy-

1. STREET RAIL-
WAYS: injury
to passenger:
negligence:
evidence.

cle, from which she received injuries to her right hip and joint, and that in consequence thereof she has since been unable to use her right limb; that during all her life, after the first accident, she was compelled to use crutches in walking and getting about; that, prior to this last injury, she had frequently come on street cars from her home; that she had become quite expert in the use of crutches and got around with apparent ease, went up and down stairs without assistance, and had ridden upon street cars two or three times a week since she was thirteen years of age. She testified that she got off and

on cars without assistance. She says that she could get on better if the conductor had assisted her. On this point she testified as follows, when asked: "Would the fact that one had hold of your arm, or anything of that kind, retard rather than assist you?" She answered:

No, it would not bother me. Q. Has any one ever tried to do that? A. Yes, lots of them have helped me. Q. When did they ever assist you? A. Well, long before I was hurt the last time. They would assist me by taking me by the arm. This would not have a tendency to pull my arm from the crutch. Q. They didn't ordinarily assist you, did they? A. Well, sometimes they did, and sometimes they didn't. This would be getting on and off the car. I never told any conductor that I could get off better without assistance. After I was thirteen, I would probably go down two or three times a week, and would go down without assistance. Q. Could you get on and off the cars without assistance? A. Sometimes I would, but not very often without assistance. Q. You don't mean to say that it was the rule of the conductors to assist you on and off the car? A. They helped me most of the time, simply by catching hold of my arm. I had never asked them to assist me, and never waited for them to give me assistance.

It appears that at this time her home was on Olive avenue. It appears that during the last four or five years she had been accustomed to ride on this line and was familiar with the faces of the conductors who ran on that line. She further testified: "After I became twelve or thirteen years of age, I would go out with my father or my mother and get on and off the cars without assistance. They never assisted me unless I asked them to. I used to go out to Ingersoll Park quite often with my mother, and once in a while without any companion." With respect to what happened at the time of the injury she testified:

I got on this car at Twelfth and Grand. As we approached Twenty-Eighth street and Ingersoll avenue I rang the bell to

get off. As the car approached Twenty-Eighth street, I walked to the back end of the car to the inside door and waited until the car stopped. When it stopped, I started to get off. I stepped on the rear platform of the car. There were two steps. When I got my crutches down on the step, the car jerked and I fell. It gave a start like it was starting up. I fell with my ankle under me. My crutches had rubber on the ends. I had used them for about a year. I fell on my left side, struck my left arm, and fell to the north and west.

The conductor testified:

When she came out of the car, I was on the back platform. I saw her come out from the body of the car, out to the door that leads to the platform. She waited inside of the door for it to stop. She came out of the door after it stopped. I wasn't engaged in doing anything except standing there on the platform. No other duty to perform. I saw her when she came to, and stood at the door leading to the platform.

There is no dispute in this case that the plaintiff fell and was injured at the place where she claims she fell and was injured. The only controversy is as to what caused her to fall; she claiming that, as she was about to alight, the car suddenly started or jerked and threw her to the ground; the defendant claiming that the car did not start or jerk, and that, in attempting to get down, she slipped and fell without any culpable act on the part of the defendant for which the defendant could in any way be held liable; and defendants contend that from the very manner of her fall, and that from the position in which she lay after her fall, it was a physical impossibility for her to be thrown where she lay by any forward movement of the car while she was attempting to alight.

The uncontradicted evidence shows that, whatever the cause of her fall, she fell to the north and towards the head of the car (that is, toward the west). It is true, as a physical fact, that one standing upon the platform of a car, when the car makes a sudden start or jerk, will naturally be thrown

back and towards the rear of the car, but it must be remembered in this case that the plaintiff was crippled; that she was using crutches; that she had but one useful foot; that she was, at the time, supporting herself upon her crutches, and the jury may well have found that, when the car started or jerked, she would naturally and instinctively brace herself on her right crutch; that the effect of this would be to swing her forward and to the left, and perhaps to the very position in which she was found, and moreover it is claimed the undisputed evidence shows that she had become an expert in the use of crutches; that she had gone up and down stairs unassisted at her home and in public places; that she frequently got on and off cars, such as this, unassisted, and without injury; that at this particular time the ground on which she attempted to alight was level and only a foot or a foot and a half from the lower step; that the platform and step were dry; that her footing was just as secure and safe in getting down these two steps as her footing was, or could be, in attempting to go upstairs at her home or in other places. What, then, was it, at this particular time, that caused her to fall in the violent manner in which the evidence shows she did fall? There is nothing in the evidence to answer, and the jury might have well found that it was due to the forward movement or jerking of the car substantially as she stated it. It is true that her evidence is directly or indirectly contradicted by all the other witnesses; but it is also true that she was in a better position to know and determine, and have impressed upon her mind and memory, the facts as they existed at the time of her fall, and what it was that caused her fall.

It is not for this court to sit in judgment on the credibility of the witnesses or the weight to be given to their testimony. That is the peculiar province of the jury. They are the sole judges of the credibility of the witnesses and the weight to be given to their testimony; and where there is evidence, more than a scintilla, to sustain the finding of the

jury, this court, in the absence of any showing of prejudice or passion on the part of the jury, must accept their finding as conclusive upon the facts. So we find that the court did not err in submitting the first question of negligence, and that the jury may well have predicated a verdict for the plaintiff upon the first ground of negligence.

It is next claimed that the court erred in submitting the second question of negligence charged, and it is said that the evidence is wholly insufficient to warrant the jury in finding any liability on the part of the defendant on account of the matters therein charged.

2. SAME: assistance of passenger: negligence: evidence.

Conceding, for the purpose of argument, that the car did not start with a jerk, as claimed by the plaintiff, and that under the evidence the jury would not be justified in finding a verdict for the plaintiff upon that ground, was there sufficient evidence before the jury to justify the jury in finding negligence on the part of the defendant in respect to the matter charged as the second ground of negligence? In one part of the evidence offered and introduced, defendants claim that the lowest step was only eleven or twelve inches from the ground; that the step was perfectly dry and safe; that nothing happened at the time or place where she fell that would suggest a reason for her falling at this particular time and place. The jury might well then have found her fall and the consequent injuries traceable to her then crippled condition. It appears that the conductor of the car was present at the time she attempted to alight; saw her attemping to alight; noticed her crippled condition; and stepped forward to the edge of the platform to be of assistance to her if she should need any assistance.

That she was crippled, that she was handicapped in her movements by the use of crutches, that to one, in that condition, all efforts of that kind and under those circumstances are necessarily attended with more or less danger, is a matter of common observation. However expert she may have

become with crutches, after her long experience in the use of them, she could not, in the very nature of things, carry herself with the ease and safety that attend the movements of persons not so afflicted. A very slight effort on the part of the conductor, standing there, observing her condition, would have enabled him to proceed from the car ahead of her and give, if needed, assistance in alighting, or, at least, protect her from the consequences that might attend a misstep or accident.

It is not necessary, in order to make this claim available, that she should have made request of the conductor to render her assistance. Most people, afflicted as she was, feel a delicacy in asking for assistance or in urging upon the attention of strangers the fact that they are unfortunate and crippled. That she was badly crippled and handicapped was apparent to the conductor, and that she might need assistance in order to alight with safety was also apparent to him, as indicated by his own testimony. That he did not render assistance is also apparent. The question then is, Was it his duty, under the circumstances, to render her any assistance or give her any protection in her efforts to alight from the car?

All negligence is bottomed on some duty, the failure to discharge which may be negligence, and if injuries result to the party to whom the duty is owned, as a proximate result of the failure to discharge that duty, liability attaches.

There is no general duty to the public to assist passengers in entering or alighting from trains or other public vehicles. The duty arises, on the part of the public carrier, when there is some unusual danger or difficulty from the place or means afforded for alighting, or the condition under which the party is required to alight or otherwise, which makes it reasonably apparent, at the time, that difficulties or dangers attend the act of alighting.

If a public carrier accepts, as a passenger, a person who is crippled or disabled, it is bound to exercise reasonable care

in securing the safety of the passenger while boarding and alighting from its cars, and whether the carrier owes the duty depends upon the facts and circumstances in each particular case. It is its duty to exercise care commensurate with the necessity, reasonably apparent, for its exercise. Where the condition is apparent from observation, it is the duty of the carrier to render such assistance as would appear, to a reasonably prudent and careful man, reasonably necessary for their safety. This duty is imposed upon all public carriers under like circumstances, and the duty to assist rests upon the carrier, where there is that apparent necessity for its exercise.

It appears from the testimony of the plaintiff that, prior to this injury, the conductors in charge of defendant's cars had frequently assisted her in alighting therefrom; that they helped her to alight most of the time, which would suggest, if true, that the necessity for assistance was at least apparent to them, for she says she never requested assistance. She says in one place in her testimony: ''Sometimes I would get on and off cars without assistance, but not very often.''

On the whole record, we think the court did not err in submitting this question to the jury. We do not presume to say that such a condition existed, or is shown to have existed at this time, that all men, situated as the defendant's conductor was, would have understood and appreciated that there was danger attending the plaintiff in attempting to alight from this car unaided and unassisted. But we do say that the evidence, if true, shows such a state of facts that it became a question for the jury to say whether there was danger to the plaintiff, and whether or not the danger was so reasonably apparent that a reasonably prudent and careful man, on whom rested the duty to render assistance, when reasonably necessary, would have seen and understood that there was danger to the plaintiff when attempting to alight without assistance. If, to a reasonably careful man, it was reasonably apparent, under the circumstances, that special care should

be exercised and assistance rendered, then a duty arose to exercise the care and render the assistance commensurate with the duty, and to render such assistance as appeared reasonably necessary for her safety.

It is next urged by the defendant that the 3. SAME: assist- court erred in refusing to give certain instruc-
ance of pas-
senger: notice tions asked by the defendant and in giving
of infirmity:
instruction. instructions 5 and 6 given by the court on its own motion.

Instruction 1, asked by the defendant, states the law correctly and might well have been given to the jury. Instruction 7, given by the court on its own motion, covers the same ground and announces the same principle of law. The criticism, however, of the court's action in refusing instructions asked, and giving the one given on its own motion, is that, in the instruction given, the court does not state "that it must appear, in order to render the carrier liable, that the infirmity was apparent or that the carrier had notice of the infirmity." It was not necessary in this case to announce that fact to the jury for the reason that the undisputed evidence shows that the conductor in charge of the car knew and understood her condition and was present at the time she attempted to alight, and therefore the duty arose, when reasonably apparent to him, that assistance was reasonably necessary for her safety.

Complaint is made of the fifth instruction given by the court, and it is claimed that this instruction is erroneous in that the jury are told that they might find defendant guily
of any negligence which might have contri-
4. SAME: negli- buted to the plaintiff's injury, whether
gence: in-
structions. charged in the petition or not, but it should
be remembered that the instructions must be taken as a whole.

The court in its second instruction, after reciting the acts of negligence charged, as hereinbefore set out, said to the jury: "You will consider no other question or charge of negligence against the defendant, and the plaintiff cannot

recover unless you find one or both of these charges of negligence established by a preponderance of the evidence.'' In the fifth instruction 'complained of the court said that the defendant would be chargeable with any negligence on the part of the employées upon the car, if it appears that they were negligent in respect to the matters and things complained of and especially referred to in these instructions. Taking both instructions together, the jury were clearly limited in their consideration of the case to the acts of negligence charged by the plaintiff in her petition.

Complaint is made of the sixth instruction given by the court, and it is claimed that this instruction invades the province of the jury in that the court said to the jury in this 5. SAME: instruc- instruction, in substance, that if they found tions. that, while the plaintiff was in the act of passing from the platform of the car to the ground, the car was suddenly started forward, without any signal being given, and without any warning to the plaintiff, and in such a manner as to cause the plaintiff to fall from said car while in the exercise of due care upon her part, you will be warranted in finding the same constituted negligence on the part of the defendant. It must be borne in mind that this instruction was given as a guide to the jury in this particular case, and not as announcing a general rule.

All instructions and all pronouncements of law must be read and understood and are presumed to have been read and understood in the light of the evidence before the court. It is claimed that this instruction practically tells the jury that, if this car was started, it matters not from what cause the defendant was liable, and ignores the idea that the only duty of the defendant was to give the passenger a reasonable time in which to alight; but it must be remembered in this case that the conductor was standing by the plaintiff while she was in the act of alighting, and that, if her testimony was true (it was for the jury to say whether it was or not) the car was started while she was in the act of alighting, the

conductor in charge of the car knew she had not alighted at the time the car started, even though he had given reasonable time for her to alight.

It must be borne in mind, in considering the instructions of the court on this point, that the evidence shows, without dispute, that the defendant's conductor in charge of this car was present and observed the plaintiff in the act of alighting; that he was there charged with the duty of superintending the arrival and departure of passengers; that he had control and management of the movements of this car; that the motorman stopped the car on his signal and started it on his signal; that it was the duty of the motorman to wait a signal from the conductor before starting the car. Both these parties were servants of the defendant company, and both charged with a duty with respect to this plaintiff and other passengers on the car; and the contention of the defendant in its criticism of this instruction that the company is not liable for injury to the plaintiff for the accident, if it had, up to the time, allowed a reasonable time for her to alight is not well taken when applied to the facts in this case. Surely it ought not to be contended that if the car was started while the plaintiff was in the act of alighting, while the conductor was present and seeing her in the act of alighting, the defendant would not be liable, if, peradventure in the judgment of the jury, it had already allowed a reasonable time for alighting. We find no error in the action of the court in refusing the instructions asked and in giving those complained of, in the light of the evidence before the court and the jury at the time.

It is not the province of the court to announce abstract principles of law, but only to state the law to the jury correctly in such a way and in such a manner, as will guide them in the consideration of the facts and in the determination of the matters in controversy.

It is next urged that the court erred in sustaining objections interposed by the plaintiff to certain questions asked of

witnesses Curtis and Sargent.   It appears that the witness

6. SAME: evi-    Curtis was one of defendant's conductors;
dence.           that he was acquainted with the plaintiff by
sight; that he had seen her at different times; that he had seen
her entering and getting off of cars frequently and says that
she generally entered a car just like any one would in her con-
dition, took more time (that is, because of her condition).
She always acted like she could get on without any assistance.
She never asked for assistance.   With this showing he was
asked · this question:  "Now, I wish you would describe to
the jury whether she, in approaching a car, was apparently
unsafe, or whether she seemed to have perfect control of her-
self in entering and getting off cars.   You may state what you
observed with reference to her being, or not being, in full
possession of her powers or able to get on without hesitation
or otherwise."   This question was objected to and objection
sustained.   It will be noticed that this witness was not present
at the time when it was claimed the plaintiff received her
injuries.   It does not appear when he made these observations
testified to by him touching the movement of the plaintiff or
the conditions under which his observations were made, and
he was apparently called upon to testify as to observations
made by him of the conduct of the plaintiff at other times,
and at other places, and, perhaps, under different conditions,
and to have it understood by the jury, or infer therefrom,
that her appearance and control of herself and her movements,
and ability to help herself, were the same at the time of the
accident as they were when he made his observations.   We
think there was no error in sustaining the objection to this
question.   The witness had testified as to his observations
generally, as to her movement and control of her person, and
his opinion, called for by this question, would only have proba-
tive force in so far as it might serve as a guide to the jury
in determining her appearance, manner, and ability to con-
trol herself at this particular time.   He had been permitted
to testify "that, when she alighted from cars, she put down

her crutches, like any one would being crippled, and alighted very easily. She always acted like she could get on and off cars without assistance.''

.Practically the same question was propounded to the witness Sargent,' with the same result that it was objected to and sustained. He, too, was a conductor for the defendant 7. SAME: evidence. company; he knew the plaintiff by sight; had frequently seen her get on and off cars; and testifying to her manner of getting on and off, as he observed it at times when she rode upon his car, he. said that she was always quick in getting on and off the car and moved rapidly. That he never saw any hesitation on her part. She was usually at the rear of the car when the car stopped. He was asked this question: ''From your experience as a conductor, is it not difficult to aid one, in entering a car or getting off, who is trying to get off themselves by the use of crutches, and if so why and in what respect?'' The matter sought to be elicited by this question is a matter of common observation, not the subject of expert testimony, and, even if it were difficult or attended with difficulty, that would not excuse the omission to render assistance, if, from the nature of the case, it should appear to a reasonably careful man that such assistance was needed. Undoubtedly there are ways of assisting a crippled person that would not be helpful to her, but it could not be contended that, if the conductor had alighted from the car to receive her, he could not have rendered her valuable assistance. An answer to this question would be only confusing and misleading to the jury and lead them into the realms of speculation outside the observation of ordinary men.

It is next urged that there was misconduct on the part of one of the jurors which entitles the defendant to a new trial. It is contended that the showing made upon the motion for a new trial established the fact that one of the 8. NEW TRIAL: bias of juror: evidence. jurors, who sat upon the trial of this case, was so prejudiced that he could not render a fair or impartial verdict upon the trial. It appears that, upon the

examination of this juror, he testified that he had no prejudice against corporations generally, and no prejudice against the defendant corporation; but it appears that on a trial subsequently had, in which he was called as a juror, he testified that he had prejudice against corporations, and that he could not do justice or render a true verdict, and that the court, in that other case, excused him on account of such showing. It appears that in the other case in which he was called there was a corporation plaintiff, and that in that case he testified that he had a prejudice against corporations generally such as would prevent him from rendering a fair and impartial verdict, and it is claimed that this showing establishes the fact that he had such a prejudice in the trial of this case now before the court that he could not render a fair and impartial verdict. The question here. is, Was the defendant, at the time he entered upon the trial of this case, disqualified from sitting as a juror because of the existence in his mind of such a feeling or sentiment against this defendant that he could not, by reason thereof, render a fair verdict upon the evidence submitted? On the hearing for a motion for a new trial, he testified that he had no such prejudice, and never had, and that his answers in the Sewing Machine Case were made with reference to that company or corporation; that he had had trouble with this company and was, by reason of such trouble, prejudiced against it, and that his prejudice did not extend to other corporations. It appears that the same judge presided in both cases, heard the examination in both cases, made the ruling in both cases, and found that in this case the juror was not disqualified by reason of the existence of a prejudice at the beginning of this case that disqualified him from sitting as a trial juror therein.

There is a clear conflict in the evidence upon the ultimate fact as to whether a prejudice existed on the part of this juror that disqualified him to sit upon the trial, and it has been held by this court that, where the evidence is conflicting, this court will not interfere with the discretion of the trial

court in refusing a motion for a new trial, based upon that ground.

It is next urged that the verdict is excessive, and for that reason the case should be reversed and a new trial ordered. We have examined the record in respect to this claim and find that the jury, upon the trial, returned a verdict for $5,130; that the court, with the consent of counsel for the plaintiff, reduced the amount of the verdict to $3,130 and entered judgment for that amount only.

A careful examination of the entire record does not satisfy us that the amount for which judgment was entered was excessive. The decision of this case rests on well-settled principles of law. We find no reversible error in the case, and it is therefore *Affirmed*.