# Richmond.

## WALTERS V. NORFOLK AND WESTERN RAILWAY COMPANY.

### November 15, 1917.

1. CARRIERS OF PASSENGERS—*Presumptions and Burden of Proof—Res Ipsa Loquitur.*—The doctrine of *res ipsa loquitur* applies when an accident happens to a passenger who is himself without fault and is caused by a defect in any of those things which the carrier is bound to supply, or is the result of the failure in any respect of the carrier's means of transportation, or the conduct of its servants in connection therewith. Under such circumstances a presumption of negligence arises against the carrier for injuries thus caused.

2. CARRIERS OF PASSENGERS—*Presumptions and Burden of Proof—Res Ipsa Loquitur.*—If an injury happens to a passenger in consequence of the breaking of the vehicle, a defect in the roadway or track, or any of the other appliances owned or controlled by the carrier in making the transit, a *prima facie* case is made for the recovery of damages, and then the carrier must show the absence of any negligence by itself or its servants causing the accident, and that the utmost diligence and observance of duty on its part could not have prevented the injury. In the absence of proof on the part of the carrier to rebut this presumption of negligence, the presumption becomes conclusive.

3. CARRIERS OF PASSENGERS—*Presumptions and Burden of Proof—Res Ipsa Loquitur.*—Where the cause of the injury is plainly outside of the control of the carrier, and has no connection with the machinery and appliances of transportation or the negligence of its servants in operating such instruments of transportation, such accident raises no presumption of negligence on the part of the carrier, and the burden of showing such negligence is upon the party who avers it.

4. CARRIERS OF PASSENGERS—*Presumptions and Burden of Proof—Res Ipsa Loquitur—Case at Bar.*—Plaintiff, an invalid, was injured by a fall while being removed in an invalid's chair from defendant carrier's baggage car by her husband and two friends, assisted by the baggage master. The invalil's chair was no part of the equipment of the company. It was entirely

under the control of the plaintiff and her friends. Her safety might well have been safeguarded if they had placed a strap or support in front of her fastened to the arms of the chair. That the accident would not have happened if her husband and his friends had not been negligent in lowering the chair was fairly manifest.

*Held:* That, the doctrine of *res ipsa loquitur* had no application.

5. CARRIERS—*Carriers of Passengers—Invalids.*—A carrier is not required to accept upon its cars, without an attendant, persons who, because of some physical or mental infirmity, are incapable of properly caring for themselves.

6. CARRIERS—*Carriers of Passengers—Invalids.*—If an unattended person, who is so sick, aged or otherwise infirm as to be unable to assist or care for himself, be accepted as a passenger, the carrier, if he has notice of the passenger's condition, is bound to exercise for his safety a degree of care commensurate with the responsibility assumed, and that would be such care as would be reasonably necessary to protect him from injury in view of his physical or mental condition.

7. CARRIERS—*Carriers of Passengers—Negligence of Carrier's Servant—Question for Jury.*—In the instant case the trial court properly referred to the jury the question of whether or not the baggage master was negligent in assisting plaintiff's husband and friends in lowering her from the baggage car.

8. APPEAL AND ERROR—*Bill of Exceptions—Certificates of Exception.*—Assignments of error as to the overruling or sustaining of objections to the reception of testimony, cannot be considered in the appellate court where they are not presented in the record either by bills of exceptions or by certificates of exception provided for by the act approved March 21, 1916 (Acts 1916, p. 708).

Error to a judgment of the Circuit Court of Warren county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Charles A. Hammer,* for the plaintiff in error.

*Downing & Weaver,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This case arises out of the following facts: The plaintiff
in error, who was a paralytic, weighed about 200 pounds,
and was confined to an invalid's chair, became a passenger
on the Norfolk and Western Railway from Hagerstown, Md.,
to Bentonville, Va., and was injured by falling from her
chair while being taken from the train at Bentonville. She
had frequently taken similar journeys as a passenger on
the trains of the company. On this as well as on many pre-
vious occasions, she had been lifted in her chair into the
baggage car, and was thus transported to her destination.
She was accompanied on this journey in the baggage car
by her sixteen year old son and fifteen year old nephew.
Before the train reached Bentonville, her husband had
secured two of his friends there to assist him in taking the
invalid in her chair from the train to the ground. Immedi-
ately upon the arrival of the train, these three men appeared
at the car door, and the baggage master rolled the chair to
the door. The plaintiff having recognized and smiled at
her husband, he instructed his friends as to the proper way
in which he desired them to render the necessary assistance.
The two large wheels of the chair passed out of the open
car door and were taken hold of. one by the husband and
the other by one of his friends, but the small or pivot wheel
at the rear of the chair caught upon the flange or groove
which extended from one side of the doorway of the car to
the other, upon or in which the sliding door moved. At
this time the baggage master had hold of the rear or back
of the chair and the other friend had been instructed to take
hold of the rear of the chair so as to support it as the small
wheel came out of the car. There being some little delay at
this point in the movement, it appears that either the bag-
gage master or the friend whose duty it was to catch the
chair as it left the car. or both together, lifted the small

wheel over the flange, and just after that the plaintiff slipped forward out of the chair and was injured. The baggage master died shortly after the accident and hence could not testify.

The testimony as to precisely how the accident happened is slightly conflicting. The theory of the plaintiff is that the baggage master was negligent in permitting the rear or pivot wheel to turn and catch upon the flange of the doorway, and that he lifted the chair over that slight obstruction so suddenly and negligently as to throw the plaintiff out of the chair and cause the injury. The evidence of the two friends who were assisting in the movement does not sustain this view. One of them, Duke, says the accident happened after the chair had been taken out of the car and while it was in charge of her husband and his friends, and that it was caused by their allowing the front of the chair to go down faster than the rear of it. The other, Williamson, does not give any explanation of the accident except that they lowered the front of the chair too rapidly, possibly, because the invalid was too heavy for them. The husband himself, who is the strongest witness for the plaintiff, says, in response to the question, "Where was the baggage man at this time?" (referring to the time when the rear wheel met the obstruction) : "He was holding the back of the chair. When it hit that piece of iron there, it turned flatways, and we was carrying it out on a level, but he lifted that chair and it shot me down, as I was off my guard, and it naturally threw the weight on us and shot us down when he lifted the back of that chair, and threw her forward." This is the only testimony in the case tending to sustain the contention of the plaintiff, and in it is the admission of the husband, who had met and taken charge of the plaintiff, that he was "off his guard" at the very time when he should have been most careful, and when nothing should have been done by anyone except what obviously it seemed best to do,

namely, to elevate the rear wheel and thus to disengage it from the flange of the doorway so that the chair with the invalid might be lowered to the ground.

The case was conducted by the plaintiff's counsel upon the theory that because the plaintiff was a passenger, the defendant owed her the very highest degree of care, and that it was liable for the slightest negligence which human skill, care and foresight could have foreseen and guarded against, and that there was a presumption of negligence from the mere happening of the accident, under the doctrine of *res ipsa loquitur*. He requested the court to instruct the jury to this effect.

While the authorities relied on have been frequently recognized and the doctrine they announce is perfectly well settled and has been frequently enforced by this court, it has no application to this case.

In *Scott* v. *London Dock Co.*, Hurl. & Colt. 3 Exch. 600, which has been followed both in England and America and approved by many text-writers, this is said: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

And this in *Richmond Ry., etc., Co.* v. *Hudgins*, 100 Va. 416, 41 S. E. 739: "A presumption of negligence from the simple occurrence of an accident arises where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, or for the management or construction of which he is responsible. *Trans.*

*Co.* v. *Downer,* 11 Wall. 129 [20 L. Ed. 160]; *Railroad Co.* v. *Anderson* [72 Md. 519, 20 Atl. 2, 8 L. R. A. 673], 20 Am. St. Rep. 493; *Railway Co.* v. *Locke,* 112 Ind. 404 [14 N. E. 391, 2 Am. St. Rep. 193]; *Hayes* v. *Railroad Co.,* 111 U. S. 228 [4 Sup. Ct. 369, 28 L. Ed. 410]."

The doctrine applies when an accident happens to a passenger who is himself without fault, and is caused by a defect in any of those things which the carrier is bound to supply, or is the result of the failure in any respect of the carrier's means of transportation, or the conduct of its servants in connection therewith. Under such circumstances a presumption of negligence arises against the carrier for injuries thus caused. For instance, if an injury happens to a passenger in consequence of the breaking of the vehicle, a defect in the roadway or track, or any of the other appliances owned or controlled by the carrier in making the transit, a *prima facie* case is made for the recovery of damages, and then the carrier must show the absence of any negligence by itself or its servants causing the accident, and that the utmost diligence and observation of duty on its part could not have prevented the injury. In the absence of proof on the part of the carrier to rebut this presumption of negligence, the presumption becomes conclusive. On the other hand, where the cause of the injury is plainly outside of the control of the carrier, and has no connection with the machinery and appliances of transportation or the negligence of its servants in operating such instruments of transportation, such accident raises no presumption of negligence on the part of the carrier, and the burden of showing such negligence is upon the party who avers it.

In *Fearn* v. *West Jersey Ferry Co.,* 143 Pa. 122, 22 Atl. 708, 13 L. R. A. 366, it is held that "in any event, where the cause of the accident by which a passenger was injured is known as well to the passenger as to the carrier, the pre-

sumption of negligence which arises from the mere fact
of the injury of a passenger while on the carrier's vehicle,
has no application, but the passenger must affirmatively
show negligence." 5 R. C. L. 74-84.

In *Peters* v. *Lynchburg Traction Co.*, 108 Va. 337, 61 S.
E. 745, 22 L. R. A. (N. S.) 1188, in which the plaintiff was
injured by a shock while turning off an incandescent electric
light lamp which he personally owned, installed and con-
trolled it is said: "But the doctrine of *res ipsa loquitur* can
have no application where the accident is due to a defective
appliance under the management of the plaintiff; nor to a
case involving divided responsibility, where an unexplained
accident may have been attributable to one of several causes,
for some of which the defendant is not responsible."

In this case the invalid's chair was no part of the equip-
ment of the company. It was entirely under the control of
the plaintiff and her friends. Her safety might well have
been safeguarded if they had placed a strap or support in
front of her fastened to the arms of the chair. That the
accident would not have happened if her husband and his
friends had not been negligent in lowering the chair is
fairly manifest.

The rule of law applicable under the circumstances of
this case is thus stated in 2 Hutchinson on Carriers (3d
ed.), section 992: "The carrier is not required to accept
upon its cars, without an attendant, persons who, because
of some physical or mental infirmity, are incapable of prop-
erly caring for themselves. The carrier, it has been said,
is under no duty to turn his vehicles into hospitals, or his
employees into nurses, for the care of such passengers. But
if an unattended person, who is so sick, aged or otherwise
infirm as to be unable to assist or care for himself, be ac-
cepted as a passenger, the carrier, if he has notice of the
passenger's condition, is bound to exercise for his safety a
degree of care commensurate with the responsibility as-

sumed, and that would be such care as would be reasonably necessary to protect him from injury in view of his physical or mental condition. And if the passenger should be so unfortunate as to become sick while upon the journey, and in consequence less able to look after himself, he would not thereby be put beyond the pale of care and protection, and it would be the duty of the carrier, if the passenger's condition were made known to him, to give him such care and protection beyond that demanded under ordinary circumstances as would be reasonably practicable with the facilities at hand, without unduly delaying the train, or unreasonably interfering with the safety and comfort of the other passengers." All of these statements are well sustained by the numerous cases cited in the notes to the passage quoted. See also, 4 R. C. L. 1234; *Anderson* v. *A. C. L. R. Co.*, 161 N. C. 462, 77 S. E. 402; *Middleton* v. *Whitridge*, 213 N. Y. 499, 108 N. E. 192, Ann. Cas. 1916C, 856.

In *Croom* v. *Chicago, etc., Ry. Co.*, 52 Minn. 296, 53 N. W. 1128, 18 L. R. A. 603, 38 Am. St. Rep. 557, this is said: "If a passenger because of extreme youth or old age, or any mental or physical infirmity, is unable to take care of himself, he ought to be provided with an attendant to take care of him; but if the company voluntarily accepts a person as a passenger, without an attendant, whose inability to care for himself is apparent or made known to its servants, and renders special care and assistance necessary, the company is negligent if such assistance is not afforded. In such case it must exercise the degree of care commensurate with the responsibility which it has thus volutarily assumed, and that care must be such as is reasonably necessary to insure the safety of the passenger in view of his mental and physical condition."

In *Railway Company* v. *Salzman*, 52 Ohio St. 558, 40 N. E. 891, 49 Am. St. Rep. 745, it is said with reference to the duty which the company owed to a sick passenger, that it

was under obligation to take reasonable care of him—such care as was reasonably practicable with the facilities at hand, without unreasonable delay to the train or discomfort to the other passengers. *Denver & P. R. Co.* v. *Fotheringham,* 17 Colo. App. 411, 68 Pac. 978; *Adams* v. *St. Louis, etc., R. Co.* (Tex. Civ. App.), 137 S. W. 437; *Mitchell* v. *Des Moines, etc., R. Co.* (1913), 161 Iowa 100, 141 N. W. 43; *St. Louis, etc., R. Co.* v. *Dobyns* (Okl. 1916), 157 Pac. 735.

The circuit court fully recognized these established and reasonable doctrines of law and instructed the jury as follows:

"1. If the husband of the plaintiff provided for her removal from the train, with her acquiescence and consent, and without any request on her or his part to the agents of the company to remove her, then the railroad company is not responsible for the acts of plaintiff's husband or of such persons as he requested to assist him in so removing her.

"2. If, however, the baggage master, the agent of the railroad company, assisted in the removal of plaintiff from the train and failed to exercise all the precautions which a man of ordinary prudence would have exercised under like circumstances and conditions and his act was an efficient cause in the injury to plaintiff, then if plaintiff herself was without fault, the railroad company is liable to compensate her for the injuries sustained even though the husband and his assistants may have also been guilty of negligence.

"3. The plaintiff herself must not have been guilty of negligence in bringing about her own injury. If the negligence of the plaintiff contributed as an efficient cause to her own injury she cannot recover no matter how guilty of negligence the agents of the railroad company may have been. The burden of proving the contributory negligence of the plaintiff is on the defendant, unless such contributory negligence appears from the evidence introduced on the part of

the plaintiff herself, in which case the burden is on her to show that she was not guilty of contributory negligence.

"4. The burden of proof is on the plaintiff to show by a preponderance of affirmative testimony that the act of the baggage master was an efficient cause in bringing about the injury to plaintiff, and also to show that such act was negligence; that is, that the said agent of the company failed to exercise the precautions, which a man of ordinary prudence would have exercised under like circumstances and conditions. If the plaintiff has not established this by a preponderance of affirmative testimony, you must find a verdict for the defendant."

From these instructions it appears that the court properly referred to the jury the question of the negligence of the baggage master, and they found a verdict for the defendant.

Under the circumstances of this case, it was the duty of the company to render such assistance to the plaintiff as appeared to be reasonably necessary, and she had the right to call upon its servants therefor. Neither she nor her husband, however, either made any request for assistance, or gave any of the employees of the company, except the baggage master, any opportunity to render such assistance. Indeed, additional assistance, under the circumstances, appeared to be entirely unnecessary, for her husband, who testified that he had frequently lifted her into and lowered her from the train in her chair, had already provided all the aid apparently necessary and commenced the removal immediately upon the arrival of the train at the station. He took charge of his wife, with her acquiescence and approval, before the accident occurred, and neither he nor either of his two friends were selected for the purpose by the company, nor directed or controlled by it at the time of the injury. The jury were properly instructed and could not, under the evidence adduced, have properly found any other verdict.

The petition also assigns as error the overruling of some objections offered by the plaintiff to the reception of certain testimony offered by the defendant, and to the sustaining of other objections made by the defendant to the admission of certain testimony tendered by the plaintiff. We cannot consider these assignments because they are not presented in the record either by bills of exceptions or by certificates of exception provided for by the act approved March 21, 1916 (Acts 1916, page 708). Even if these objections had been properly presented by the record, they would not change the result.

*Affirmed.*