HOLLINGSWORTH v. SKELDING, Receiver.

(Filed October 16, 1906).

*Carriers of Passengers—Degree of Care Required—Street Railways—Negligence—Nonsuit—Practice.*

1. An instruction that "Carriers of passengers are insurers as to their passengers, except as to the act of God or of the public enemy. They are held to exercise the greatest practicable care, the highest degree of prudence and the utmost human skill and foresight which has been demonstrated by experience to be practicable.  *  *  * They are against all perils bound to do their utmost to protect and prevent injury to their passengers," is erroneous. *Dictum* in *Daniel v. Railroad,* 117 N. C., 602, disapproved.

2. The duty a carrier owes a passenger is that, as far as human care and foresight could go, he must provide for his safe conveyance, but the law does not require the carrier to exercise every device that the ingenuity of man can conceive.

3. In an action for personal injuries against a street railway, where the plaintiff testified that he was sitting near the rear end of the car, about 25 feet long, and that in order to get the money out of his pocket to pay his fare, he got up out of his seat and put one foot on the running-board, on the side of the car, and one on the floor, and just as he paid his fare an ice-wagon came up and struck him; that he did not see the wagon before the collision and that at the time of the collision the car was running at a pretty good speed and that the rear end of the wagon struck him, and that the wagon at the time was going in an opposite direction from that in which the car was moving: *Held,* that the motion to nonsuit should have been granted.

4. Where a motion to nonsuit is made and the requirements of the statute are followed and such motion denied below, and sustained in this Court, upon the coming down of the judgment and opinion it is the duty of the Superior Court to dismiss the action.

CLARK, C. J., and HOKE, J., dissenting.

ACTION by C. C. Hollingsworth against A. B. Skelding, receiver of the Wilmington Street Railway Company, and others, heard by *Judge W. R. Allen* and a jury, at the Jan-

uary Special Term, 1906, of the Superior Court of DUPLIN.

This was an action to recover damages for a personal injury received by the plaintiff while a passenger on the cars of the Wilmington Street Railway Company.

There was evidence tending to prove that plaintiff had one foot on the running-board and the other on the floor, and was injured by an ice-wagon coming in contact with him.

The Court submitted following issues: 1. Was the plaintiff injured by the negligence of the defendant? Answer: "Yes." 2. Was the plaintiff guilty of negligence which contributed to his injuries? Answer: "No." 3. What damage, if any, is plaintiff entitled to recover? Answer: "$600."

At the conclusion of the plaintiff's evidence the defendant moved to dismiss the action and for judgment of nonsuit. Motion overruled, and defendant excepted and appealed from the judgment.

*Stevens, Beasley & Weeks* for the plaintiff.
*Davis & Davis* for the defendant.

BROWN, J. His Honor charged the jury that "Carriers of passengers are insurers as to their passengers, subject to a few reasonable exceptions. They are held to exercise the greatest practicable care, the highest degree of prudence, and the utmost human skill and foresight which has been demonstrated by experience to be practicable. They are so held upon the ground of public policy, reason and safety to their patrons. The exceptions are the act of God and the public enemy. If these, that is, the act of God or of the public enemy, be the proximate cause of the injury and without any neglect on the part of the carrier, the carrier is not liable. He is against all perils bound to do his utmost to protect and prevent injury to his passengers."

It is due to the learned Judge who tried this case to state that this instruction appears to have been given *verbatim* from the opinion of *Faircloth, C. J.,* in *Daniel v. Railroad,*

117 N. C., 602. An examination of the case discloses that it is a mere *dictum,* a generalization, not necessary at all to the decision of the case. As a proposition of law it is not supported by authority, but on the contrary is against the teachings of the text-writers as well as the judgments of the courts. It does not, therefore, meet with our approval.

The rule laid down by the late *Chief Justice* applies to the transportation of freight and all classes of inanimate objects only. The reasons given for this rule by *Lord Holt* were "to prevent the clandestine combinations with thieves and robbers to the undoing of all persons who had dealings with them." Hutchinson says this rule was never applied to carriers of passengers. Hutchinson on Carriers, sec. 4497. The Supreme Court of the United States in an elaborate opinion by *Chief Justice Marshall* refused to apply the rule to slaves. He says: "In the nature of things and in his character, he resembles a passenger, not a package of goods. It would, therefore, seem reasonable that the responsibility of the carrier should be measured by the law which is applicable to passengers rather than by that which is applicable to the carriage of common goods." *Boyce v. Anderson,* 2 Pet., 150.

When the attempt is made to hold the carrier responsible for injuries received by living human beings, negligence is the essential element in the case, and without it the injured person cannot recover. This is universally true where the common law is administered. *Grote v. Railroad,* 2 Exch., 251; Hale on Bailments and Carriers, 517; Fetter on Carriers, 5-8; Thompson on Carriers, sec. 497; 2 Wood Railway Law, 1054-1059, and notes; 2 A. and E. Enc. (1 Ed.), 746, 747, where numerous authorities are collected. The degree required of carriers of the passenger has been the subject of much discussion by text-writers and Judges. The weightiest authorities agree that this standard does not extend beyond the highest degree of a practicable care. Fetter, *supra,* sec. 11.

We doubt if any better definition of the duty a carrier owes the passenger can be found than that of *Lord Mansfield* in *Christie v. Griggs,* 2 Camp., 29: "As far as human care and foresight could go, he must provide for their safe conveyance." In commenting upon this case Mr. Barrow says: "It must not be supposed, however, that the law requires the carrier to exercise every device that the ingenuity of man can conceive. Such an interpretation would act as an effectual bar to the business of transporting people for hire." In view of these authorities, and many others we could quote, the Judge erred in the instruction given, although in doing so he followed the language of the late *Chief Justice* in the *Daniel case.*

2. The defendant offered no evidence, and in apt time moved to dismiss the action and to nonsuit the plaintiff upon the ground that there was no evidence of negligence.

The only theory of negligence upon which the plaintiff's counsel rested his case in this Court is that the ice-wagon was in the act of crossing the car-track, in front of the car, when it was struck by the car and knocked completely around, so that its rear end struck the plaintiff, and that the motorman was guilty of negligence.

The plaintiff was the only witness who testified concerning the accident, and an examination of his testimony shows that this theory is purely conjectural and has no foundation in fact to support it. The plaintiff was near the rear end of a car, about 25 feet long. Running the length of this car is a running-board about 18 inches from the ground, used by passengers in getting on and off. The plaintiff testified: "The conductor called on me for my fare, and I said 'All right,' and I got up out of my seat and put one foot on the running-board and one on the floor of the car so I could put my hand in my pocket, and got a nickel and paid him; and when I put my hand back in my pocket the wagon of Worth & Co. came up and struck me. It knocked me senseless for a minute or two,

and when I came to my senses some one had hold of me. I did not see the ice-wagon before the collision. At the time of the collision the street car was running at a pretty good speed." The wagon belonged to Worth & Co., and it is in evidence that at the time the plaintiff was injured it was moving in an opposite direction from that in which the car was going, and was drawn by a horse guided by a driver. On cross-examination the plaintiff says: "I think it was the rear end of the wagon, and it struck me on the right side."

The collision which the plaintiff refers to is evidently the collision of the wagon with himself, for there is no evidence that the wagon struck the car itself anywhere. Had the front of the car crashed into the wagon, while crossing the track, with sufficient force to knock it entirely around, the plaintiff must have felt the jar before he was hurt, and could have testified to this. According to his version there must have been no previous jar and crash. The horse, driver and wagon had passed the motorman in safety before the plaintiff was hit. It is hardly within the domain of possibility that the car could have hit the wagon on the track and knocked it so entirely around that its rear end struck the plaintiff. Had such been the case, the horse could not have been pulling the wagon in an opposite direction from that in which the car was moving at the time the rear end of the wagon hit the plaintiff. Such a blow must have turned the horse around as well as the wagon, and demolished the latter.

Again, the plaintiff says that when the rear end of the wagon struck him the car was running at "a pretty good speed." This could not have been true had there been a collision immediately before on the track by the car running into the wagon. The force of such an impact would not only have been plainly felt by the passengers, but must have stopped the car, or have greatly reduced its speed before the rear end of the wagon could hit the plaintiff at the rear end of the car.

We conclude that, taking the account of the accident given by the plaintiff in the light most favorable to him, no reasonable deductions can be drawn from it tending to sustain the only theory of negligence advanced by counsel. The motion to dismiss the action and nonsuit the plaintiff should have been granted. The cause is remanded to the Superior Court of Duplin County with instructions to so order.

It is suggested that a new trial should be ordered in this case. We do not think so. If the plaintiff can "mend his lick" and produce new evidence, this Court has declared that he has a right to bring a new action within twelve months. *Meekins v. Railroad,* 131 N. C., 1. If we ordered a new trial and the plaintiff should gather additional evidence, which possibly he should have had on the first trial, and thereby recover against the defendant, the latter would be taxed with the entire costs, including the first trial, in which plaintiff failed on his own showing. *Williams v. Hughes,* 139 N. C., 17. For this "false clamor" the plaintiff should pay the costs.

To order a new trial in this and similar cases works injustice to defendants, and is against the meaning and spirit of the statute. Revisal, sec. 539. As the plaintiff is not cut off from bringing a new suit, the justice of the matter is with the defendant, who should not be subjected ultimately to the possibility of paying the costs of a trial where plaintiff failed to "make out a case." The statute declares that if defendant moves to nonsuit at the close of all the evidence, and it is ruled against him, he shall have the "benefit of his exception" in this Court. If we order a new trial we do only what we would have done had the matter been determined on the refusal to instruct the jury "that upon the whole evidence plaintiff cannot recover." If a new trial is the only result, there is nothing whatever to be gained by excepting to a refusal to nonsuit. The defendant just as well resort to a prayer for instruction. The statute was evidently intended to preserve the defendant's rights to the end that if the Court

below erred, this Court should correct that error by directing the Court below to render the judgment which should have been rendered. There is no other way to give the defendant the full and just "benefit of his exception."

It is admitted that cases can be found in our reports, such as *Prevatt v. Harrelson,* 132 N. C., 252, where the motion to nonsuit was refused below and allowed here, when a new trial was ordered. So there are cases *contra* where "error" or "reversed" was written at the close of the opinion and a new trial was not ordered, which indicate plainly that the practice has not been uniform.

We think the practice was best settled by *Mr. Justice Hoke,* speaking for a unanimous Court as at present constituted, in a more recent case, *Dunn v. Railroad,* 141 N. C., 522. In that case the motion to nonsuit was denied below; verdict and judgment for plaintiff, and defendant appealed. The Court says: "There was error in overruling the motion to nonsuit, and upon the testimony the action should have been dismissed. This will be certified to the Court below that judgment may be entered dismissing the action. Reversed." This is the most recent precedent in our reports.

A new trial should be ordered in cases where there has been a verdict and error is shown in the rulings of the Court upon questions of evidence and in instructing the jury, and the like—errors such as is said in *Bernhardt v. Brown,* 118 N. C., 711, which "enter into and bring about an erroneous verdict." A motion to nonsuit or demurrer to the evidence does not enter into the trial so far as it affects a verdict. When it is interposed the facts in evidence are to be taken as true and interpreted in the light most favorable to the plaintiff. The matter is then one of law, as upon a "case agreed," and calls for a judgment upon those facts, and only those. This is what is said by this Court in *Neal v. Railroad,* 126 N. C., 641. If the judgment of the Court below upon such "case agreed" is erroneous, it is our duty to direct that the proper judgment

be rendered. It is different where the plaintiff makes out his case, but the Court errs in the charge or rulings upon the evidence. Then a new trial is the only method of correcting the error. If this Court reverses or affirms a judgment it may at its discretion enter judgment here or direct it to be done below. *Bernhardt v. Brown, supra.* The Revisal, sec. 1542, says: "In every case the Court may render such sentence, judgment and decree as on inspection of the whole record it shall appear to them ought in law to be rendered thereon."

In order that the practice might be settled, we have considered this matter anew, and again hold that where a motion to nonsuit is made and the requirements of the statute are followed, and such motion denied below, and sustained in this Court, upon the coming down of the judgment and opinion it is the duty of the Superior Court to dismiss the action.

Upon an inspection of this record it appears to us that at the close of all the evidence the Superior Court should have entered judgment dismissing the action. As it failed to do so, it is mandatory upon us to correct the error by directing such Court to enter such judgment.

Reversed.

CLARK, C. J., concurs in the opinion and in the conclusion, but submits that it is erroneous to insert the order that the Court below shall enter a judgment of nonsuit. The uniform practice and decisions of this Court, as well as justice, forbid it.

Where there is a nonsuit below and that is affirmed on appeal, such entry is proper. But when a case is tried by a jury below and on appeal any error is found in the proceedings, error is declared and the case goes back for a new trial.

If a demurrer to the complaint is overruled, and on appeal it is held that it should have been sustained, this Court does not direct judgment below. So, if a demurrer to the evidence is erroneously overruled, final judgment below should not be

directed. The reason is the same in both cases. *Non con-
stat* but if the Judge had ruled correctly the plaintiff might
then and there have asked and obtained leave to amend his
complaint or amend the evidence. The plaintiff ought not
to be put in a worse plight because, the Judge being with him,
he did not ask leave to offer more evidence. If, when the case
goes back, the plaintiff cannot "mend his lick" nonsuit will
be voluntarily taken or will be ordered by the Court, but if
the plaintiff can offer further evidence, what benefit will it
be to the defendant to drive the plaintiff to a new action?

The practice is settled. In *Bernhardt v. Brown,* 118
N. C., at p. 711, it is said, refusing a motion to correct an
entry of "new trial": "The errors affected the proceedings
and went into and brought an erroneous verdict. The mover,
however, insists that the error is so vital that this Court can
see that on its correction the verdict on the next trial must
be for the opposite party. It may be so. It may also be true
that on the next trial there may be amendments to the plead-
ings or new evidence brought forward. The Court cannot
consider argument as to the possibility or probability of such
changes. If the error declared by the Court is vital and
irremediable, then on the new trial below the appellee will
simply, in deference to our ruling, submit to a final judg-
ment." This Court cannot enter or direct "judgment re-
versed" upon the assumption that the appellee will be com-
pelled to take that course. When, on an appeal, error is
found as to the proceedings anterior to and including the ver-
dict, we can only declare error and order a new trial.

In *Prevatt v. Harrelson,* 132 N. C., 252, the very proposi-
tion now before us is expressly decided, the Court saying:
"In refusing the motion to nonsuit there was error, for
which, *under the uniform practice of this Court,* there must
be a new trial. On such new trial, if the plaintiff can 'mend
his lick' by additional and sufficient evidence, well and good.
He has not lost the land. If he cannot offer additional evi-
dence, this, though a new trial in form, will be virtually a

finality against him." In the same case, it is further said to be "the settled practice that when a motion to nonsuit (or a demurrer to the evidence) is erroneously refused, a new trial has always been ordered. *State v. Adams,* 115 N. C., at p. 784; *State v. Rhodes,* 112 N. C., at p. 858, are exactly in point, besides numerous cases in which it is taken as settled practice. The verdict and judgment being set aside, a trial *de novo* is necessary."

In *State v. Adams,* 115 N. C., at p. 784, it is said: "In failing to sustain the demurrer to the evidence, and also for refusing to instruct the jury that there was no evidence to go to them, there was error. But this *does not necessarily dispose of the case. Non constat* that the State may not, in some cases, produce more evidence on the next trial. *State v. Rhodes,* 112 N. C., 857."

Not only is this the settled and uniform practice, even in criminal cases as above shown, but it is a just practice both to save the unnecessary cost of a new trial, when if the plaintiff has additional evidence, it is to the interest of both parties that the matter shall be determined in this action, and because as said in *Prevatt v. Harrelson,* 132 N. C., at p. 253: "The verdict and judgment being set aside, a trial *de novo* is necessary." Indeed, it is then a constitutional right, if the plaintiff can offer evidence sufficient to go to a jury. The practice is settled thus, if uniform precedents can settle anything. There is no reason shown for overruling them and no benefit to any one.

HOKE, J., concurring: I agree with the *Chief Justice,* and am of opinion that the weight of authority, where the subject has been considered by the Court, sustains the position that, on the facts in the present case, a new trial should be awarded.

In the case of *Dunn v. Railroad,* cited in the opinion of the Court, the debated question was as to the liability of defendants on facts about which there was no substantial

difference between the parties, and the mind of the writer was not especially attentive to the form of the order made in the cause; nor was this question raised or discussed before us.

WALKER, J., concurring: In the complex situation which has resulted from the unsettled course of decision upon the question involved in this appeal as to the proper judgment to be entered, where there is a reversal of the Judge's refusal to grant a nonsuit or to dismiss the action upon the evidence, I find myself in sympathy with what is said by *Mr. Justice Brown* on that point. If I have unwittingly contributed to bringing about the confusion, the sooner I assist in extricating the Court from the unfortunate dilemma, the better. I suppose that now I am remitted to the right of expressing my opinion in accordance with the original view I have always taken of the statute: that it means what we now decide it to mean, or it means nothing, and was therefore a vain and useless enactment. To my mind, at least, it is clear that if the defendant has the right to dismiss at the close of the testimony in the lower Court, he must needs have the same right here, or we do not enforce the will of the Legislature according to the intent and spirit of its enactment and we refuse to reverse an error in law which, by the Constitution, which is the law of our creation (Art. IV, sec. 8), and the statute (Revisal, secs. 1543 and 1542) we are commanded to do. I concur in the opinion, as written by *Mr. Justice Brown* for the Court, in all respects, except as to the effect of a judgment of nonsuit upon the right of the plaintiff to bring a new action and prosecute the same successfully. As to whether the former judgment of nonsuit is a bar to a new action, I prefer not to consider in this appeal, as the question is not presented. I confine my concurrence to what is actually decided by us in this case.

CONNOR, J., concurs in the concurring opinion of WALKER, J.