## JAMES BRIGGS v. DURHAM TRACTION COMPANY.

(Filed 22 April, 1908).

1. **Street Railways—Carriers—Negligence—Prima Facie Case—Burden of Proof—Accident.**

    While the proof that plaintiff was injured in a collision upon defendant's track between two of its cars moving in opposite directions makes out such a case of *prima facie* negligence as alone entitles plaintiff to go to the jury, it does not create an irrebuttable presumption of negligence, but shifts the burden of proof so as to require the defendant to show that the collision was the result of an accident which reasonable prudence and foresight could not prevent.

2. **Street Railways—Carriers—Negligence—Not Insurers—High Degree of Care.**

    A street car company is not an insurer of its passengers, and it is only liable for damages arising from its negligence in not exercising such a high degree of care, skill and diligence in operating its cars as is consistent with the practical operation of its business.

3. **Street Railways—Negligence—"Act of God."**

    When the collision between two street cars in which the injury occurred was an accident due directly and exclusively to neutral causes, without human intervention, which by no human foresight, pains or care reasonably to have been expected could have been prevented, the street car company is not responsible, as such arose by an act of God.

4. **Street Railways—Negligence—Accident—Proximate Cause—Questions for Jury.**

When it was admitted that the injury complained of was caused by a collision between two cars of defendant street car company, and no contributory negligence was alleged, it was error in the lower court in his charge to the jury to cut the defendant off from going to the jury upon any feature of the case except the fact of injury and the proximate cause, the latter not being in dispute, under evidence tending to show that the injury resulted from an accident which reasonable prudence and foresight could not have prevented. Under conflicting evidence the question was one for the jury.

5. **Street Railways—Negligence—Headlights, Absence of—Not Negligence per se.**

While street cars are required to be provided with headlights to be used while running in the dark, the question as to their thus running without them being negligence necessarily depends upon surrounding circumstances and is not under all circumstances negligence *per se.*

6. **Same—Leaving Pass Switch—Uncertainty of Lights.**

When a conductor of a street car left a pass switch at night, when the cars are required to use headlights, with knowledge that under the existing weather conditions the steadiness of the current used in lighting could not be relied on, and in consequence thereof his car was unlighted, and the jury find that on that account, without due care for the safety of the passengers, a collision was caused with a car moving on the same track in an opposite direction, it was such an omission of duty by the conductor to remain at the switch as would constitute actionable negligence on the part of the defendant street car company.

ACTION tried before *Webb, J.,* and a jury, at January Term, 1908, of DURHAM.

The court submitted these issues:

"1. Was plaintiff injured by negligence of defendant, as alleged in the complaint?" Answer: "Yes."

"2. What damage, if any, has plaintiff sustained?" Answer: "Five hundred dollars."

From the judgment rendered defendant appealed.

*Giles & Sykes* for plaintiff.
*Manning & Foushee* for defendant.

 BROWN, J.   Plaintiff sues to recover damages for an injury alleged to have been sustained by him in a collision between two of defendant's electric cars on its track in Durham on 19 December, 1906.   Concerning the immediate cause of the collision and its effect upon him the plaintiff testified: "After traveling about twenty minutes the car I was on collided with another car.   The lights on the car were on when I got on, and then they went off.   The car stopped; then presently the lights came on again, and this kept up until the time of the collision.   There were no lights on the car at the time of the collision.   Both of the cars were coming down hill, as near as I can remember.   There were three, four or five people on the car.   When the collision occurred I was sitting on the right-hand side and it flung me on the other side, and I fell and struck my back against the seat.   I was thrown from the right-hand side to the left-hand side, across the aisle, and was struck about the middle of the back, on the backbone.   Did not see any lights on the other car."

 The defendant offered evidence tending to prove that the cause of the collision was the extinguishment of the lights; that all electric cars are lighted by electricity generated at the power house; that on this occasion its cars, wires, brakes and line were in good condition, but that a heavy sleet falling on the wires kept the trolley pole from making connection with the overhead trolley wire, or rather that the electric current could not get from the wire to the trolley pole on account of the sleet.   This caused the car to stop until the heat from the electric current could melt the sleet on the wire.   When this was done the lights would come on the car and the car would go forward until the sleet again stopped it.   Consequently the progress of the car was slow and the lights were first on and then off.   There was a passing switch on Alston Avenue.   After waiting on the switch some twenty minutes the car plaintiff was on went on towards East Durham to see what had become of the car from East Durham and assist it

to get back to the car barn. The car from East Durham was in the same condition as the car bound for East Durham. The motorman was on the front platform, looking for the other car, and the conductor on each car was standing on the steps of the front platform, looking around the vestibule to the front, watching for the other car. At the time of the collision the east-bound car had stopped and the west-bound car was coming down a slight grade, without any current on, at the rate of four or five miles an hour. There was a slight jar.

The court charged the jury, if they should find from the evidence that at the time of the collision it was a dark night and that the defendant had no lights on its cars, and should further find that said collision occurred in the way and manner testified to by defendant's witnesses, then the defendant was guilty of negligence, and the jury should answer the first issue "Yes," provided they should further find that such negligence was the proximate cause of the plaintiff's injury, if they should find by the greater weight of evidence that he was injured. To this charge the defendant excepted, as well as to the refusal of his Honor to give the instructions tendered. We are of opinion that the exceptions are well taken.

While the proof that plaintiff was injured in a collision upon defendant's track between two of its cars moving in opposite directions makes out such a case of *prima facie* negligence as alone entitles the plaintiff to go to the jury, it does not create an irrebuttable presumption of negligence. It only shifted the burden of proof to defendant, requiring it to go forward with its proof and prove, if it could, that the collision was the result of an accident which reasonable prudence and foresight could not prevent. *Overcash v. Electric Co.*, 144 N. C., 573; *Winslow v. Hardwood Co.*, ante, 275. The law exacts of a street railway company a high degree of care, skill and diligence in operating its cars, as far as is consistent with the practical operation of its business, but it is only liable for negligence at last, and it is not an insurer of

the safety of its passengers. "A carrier of passengers must exercise the care of a very cautious person surrounded by the same circumstances." Nellis Street R. R. Acc. Law., 123; *Bosqui v. Railway Co.,* 131 Cal., 390. But a common carrier, as well as an individual, is excused from responsibility for injuries which are caused by the act of God, which has been well defined by the learned counsel for defendants in their prayer for instruction to be "any accident due directly and exclusively to neutral cause without human intervention, which by no human foresight, pains or care reasonably to have been expected could have been prevented."

The charge of the learned Judge practically cut the defendant off from going to the jury upon any feature of the case except the fact of injury and the proximate cause. The latter is not in dispute. If the plaintiff was injured at all it was in this admitted collision, and as he is not charged with contributing to his injury there can be no other cause for it. The circumstances under which the defendant's cars were running on this occasion, with the lights first on and then off, may or may not render it liable for negligence, according to the view the jury shall take as to what was the duty of defendant's agents and conductors under such conditions. Under the evidence it was in this case essentially a question for the jury to determine.

The learned annotator in a note to the case of *McGee v. Railway Co.,* 26 L. R. A., 301, says: "It would seem to be a fair deduction from all the authorities that the question of running a street car of any kind in the dark without a headlight should be left to the decision of a jury." In that case it was held to be not negligence *per se* under any and all circumstances.

We do not mean to intimate an opinion that electric cars should not be provided with headlights. On the contrary, we think they should. But whether it is negligence to run the

car at all in the dark when the light is not burning must necessarily depend upon circumstances.

If the conductor of the car in which plaintiff was a passenger left the pass switch on Alston Avenue with knowledge that under weather conditions the steadiness of his current could not be relied on, in consequence of which his car was frequently unlighted, and if the jury should find that under such existing conditions reasonable prudence and due care for the safety of his passengers required him to remain at the switch, it was his duty to do so, and such omission of duty would constitute actionable negligence if it caused a collision.

New Trial.