GERALDINE G. GARVEY v. ATLANTIC GREYHOUND CORPORATION.

(Filed 19 November, 1947.)

1. **Carriers § 21b—Evidence held sufficient for jury in action by passenger injured in fall from moving bus.**

Plaintiff's evidence tended to show that the bus in which she was riding as a passenger passed several cars traveling in the same direction upgrade, pulled out of the line of traffic to pass another car, but that the driver, apparently seeing a car approaching from the opposite direction, applied his brakes in order to get back in the line of traffic, then quickly accelerated his speed and turned sharply to the left to follow the curve of the road, and that the bus was traveling 40 to 50 miles per hour when it entered the curve. Plaintiff's evidence further tended to show that the door-securing mechanism was defective to the actual or constructive knowledge of defendant, and that the peculiar movements of the bus caused plaintiff, who was standing in the aisle immediately back of the driver, to fall forward, where, to save herself, she caught hold of the rod of the door-securing mechanism, loosening it, then to fall backward, and then, when the bus turned to the left around the curve, to fall out of the bus through the door which had flown open. *Held:* Defendant's motions to nonsuit were properly refused, there being sufficient evidence of negligence on the part of the carrier to be submitted to the jury and the evidence being insufficient to establish contributory negligence as a matter of law on the part of the passenger.

2. **Carriers § 21a (1)—**

While a carrier is not an insurer of the safety of passengers whom it undertakes to transport, it does owe them the duty of exercising the highest degree of care for their safety consistent with the practical operation and conduct of its business.

3. **Automobiles § 18i—**

Where plaintiff's evidence tends to show that the driver was operating defendant's bus at a rate of 40 to 50 miles an hour in heavy traffic around a curve on an upgrade, an instruction that a speed of 45 miles per hour, rather than a charge that a speed in excess of 45 miles per hour, is *prima facie* evidence that the speed is unlawful, *is held* not prejudicial in view of the statutory requirement to reduce speed below the *prima facie* limits prescribed in traversing a curve or when special hazards exist with respect to other traffic. G. S., 20-141, prior to amendment by Chap. 1067, Sec. 12, Session Laws of 1947.

APPEAL by defendant from *Carr, J.,* at June Term, 1947, of WAKE. No error.

This was an action to recover damages for a personal injury resulting from a fall from one of defendant's buses, alleged to have been caused by the negligence of the defendant.

It was not controverted that on the occasion alleged, to wit: 16 October, 1946, about 10:30 p.m., the plaintiff was a passenger on defendant's bus en route from Raleigh to her home near Clayton, N. C.; that the bus was being operated on regular schedule by defendant's driver, and that plaintiff suffered a serious and permanent injury as result of being thrown or falling from the moving bus, though the defendant denied that it was negligent in any manner complained of, or that plaintiff's injury proximately resulted therefrom. Contributory negligence also was pleaded by the defendant.

In support of her allegations of negligence the plaintiff offered evidence tending to show that the circumstances and causes of her injury were substantially these: Plaintiff was a passenger on defendant's bus which left Raleigh about 10:15 p.m. traveling east on Highway 70. The bus was crowded when it left Raleigh with all seats occupied and 12 or 15 persons standing in the aisle. Plaintiff secured a seat next to the aisle and immediately in rear of the bus driver. Shortly before she reached her destination she gave her seat to Mrs. Lassiter, whom she knew to be employed on a night shift in a mill, and stood in the aisle at the front, back of the white line, leaning against the front seat on the right and holding the rail which extended over the panel or shield protecting the front of the first seat. She was within 18 inches or two feet of the driver, and to his right and rear. It does not affirmatively appear that any other person was standing in the aisle at this time. The driver had his face turned to his left and was conversing with passengers behind him. The traffic on the highway was unusually heavy incident to State Fair week in Raleigh. The bus was behind schedule on account of frequent stopping to discharge and receive passengers, and was being driven at times 60 miles per hour, passing cars, in and out the line of traffic. Going east between Auburn and Clayton, and approaching the locality of the accident, there was a dip in the contour of the road, with an upgrade on the east side, culminating in a sharp curve to the left near the crest of the grade. In traversing this portion of the road and up this grade, the bus passed three cars going in the same direction and then pulled out of line to pass another, when, apparently, the driver observed a car approaching in the west bound lane and applied his brakes in order to enable him to get back in line, and then quickly accelerating his speed suddenly lunged forward and turned sharply to the left to follow the curve in the road. The result of these maneuvers was first to throw

the plaintiff forward, causing her to lose her hold on the rail and to topple and fall forward on the platform or well which was six or eight inches lower than the aisle. To save herself she caught hold of the rod which connects the lever near the steering wheel with the mechanism for opening and closing the right front door of the bus. Due to the defective condition of this mechanism the door fastening was loosened by the pressure on this rod, and as the bus immediately jerked forward plaintiff was thrown back and endeavored to catch the rail on the panel in front of the right front seat, and then as the bus turned sharply to the left on the curve, the door was thereby caused to open and the plaintiff was thrown out to the ground. Her leg was run over and crushed by the rear wheels of the bus and had to be amputated. According to plaintiff's evidence the driver was oblivious of these happenings and had to be called twice to make him aware that one of his passengers had fallen from the bus. The bus ran 97 steps or yards before it was stopped. There was evidence that the bus in taking this curve (which a witness described as the worst curve between Raleigh and Clayton) was traveling forty to fifty miles per hour. The defect in the door-securing apparatus of the bus was explained to the jury by a witness acquainted with its construction. This witness, who had been seated on the right front seat of bus with two others, testified he had previously noticed the mechanism was loose and would not hold the door against an ordinary jar, and that its condition was such that the driver could have observed it. Another witness had seen a bus door fly open on another occasion, though defendant's driver said that was not on the same bus.

On the other hand, the defendant's evidence tended to show entire absence of negligence on its part in any respect alleged about which testimony was offered, or that there was anything unusual in the operation of the bus. Defendant's evidence tended to show the bus was being driven carefully, was not late, and that immediately prior to the accident the speed was 40 to 45 miles per hour. Defendant's witnesses testified plaintiff was standing up with her purse and a small bundle under her left arm, and that she fell or stumbled forward, and got hold of the door rod and the door came open. The driver said he saw her fall, but, being occupied with operation of the bus, was unable to do anything but pull over carefully to the side of the road and stop; that he went only 25 yards before stopping. He did not know what caused her to fall; that he had not put on brakes or given the bus a jolt or lurch; that he did not recall passing any cars immediately beforehand, and was in the line of traffic; was not talking. He further testified that at the point where plaintiff caught hold of the rod, if it is pulled back hard enough the door will open, and further that there was no defect in the mechanism.

In response to issues submitted the jury returned verdict in favor of plaintiff, finding that plaintiff was injured by the negligence of the

defendant, that she did not by her own negligence contribute to her injury, and assessing damages in sum of $27,500. From judgment on the verdict defendant appealed, assigning errors.

*Bunn & Arendell and Thos. W. Ruffin for plaintiff, appellee.*
*Ehringhaus & Ehringhaus for defendant, appellant.*

DEVIN, J. Defendant's appeal from an adverse judgment below presents at the outset the question whether plaintiff's evidence was sufficient to make out a case of actionable negligence on the grounds alleged. Error is assigned in the denial of defendant's motion for judgment of nonsuit and in the refusal of the court to give peremptory instructions in its favor as requested.

However, giving to the plaintiff's evidence that favorable consideration required under the rule as against a demurrer (*Nash v. Royster,* 189 N. C., 408, 127 S. E., 356), we conclude she has offered evidence of negligence in respect to the manner of operation of defendant's bus on the occasion of her injury and in respect to the maintenance of the door fastening for the protection of passengers, and that her injury proximately resulted therefrom, and that this evidence is of sufficient probative value to withstand defendant's motions. "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." *Lavender v. Kurn,* 327 U. S., 645.

Considering plaintiff's testimony and that of her witnesses, together with the inferences reasonably deducible therefrom, in the light favorable to her, it would seem that the injury of which plaintiff complains resulted from being thrown from the defendant's swiftly moving bus, and that the violent motions of the bus as detailed, due to improper operation, caused her to lose her balance and fall forward on the platform and caused the inadequately secured door to become unfastened and fly open, subjecting plaintiff to the centrifugal force of the motion of the bus in traversing a sharp left curve, and that in consequence she was swept out of the open door of the bus to the ground, and injured.

Further, we think the evidence susceptible of the inference that the attempt of the driver of the bus to pass a car just before reaching the curve and the necessity of a quick turn to the right to avoid an oncoming car and regain the line of traffic and then to follow the curve to the left, tended to accentuate the sharpness of the turns required to be made, first to the right and then to the left, and to increase the centrifugal pull of the bus and occupants to the right in order to follow the perimeter of the curve.

While the defendant in the operation of its bus would not ordinarily be held liable to a passenger for sudden jerking or jolting caused by

changes of speed or direction incident to the operation of the bus on the highway in relation to the traffic then being thereon, we think the plaintiff's evidence tends to go further and to show failure to exercise proper care, under the circumstances, and that defendant's failure in the respects alleged was the proximate cause of the injury.

Note also must be taken of testimony tending to show the loosened condition of the door fastening mechanism, and this, together with evidence of improper operation of the bus, as showing causal connection between the negligence of the defendant in these respects and the injury complained of.

Also must be kept in mind, in considering the evidence on the issue of negligence, that while the carrier is not an insurer of the safety of passengers whom it undertakes to transport, it does owe them the duty of exercising the highest degree of care for their safety consistent with the practical operation and conduct of its business. *White v. Chappell,* 219 N. C., 652, 14 S. E. (2d), 843; *Hollingsworth v. Skelding,* 142 N. C., 246, 55 S. E., 212.

Nor do we think there was evidence of contributory negligence on the part of the plaintiff such as would justify a nonsuit on that ground. Whether she used due care under the circumstances was a question for the jury. *Marzelle v. Mfg. Co.,* 227 N. C., 674, 44 S. E. (2d), 80; *Watkins v. Raleigh,* 214 N. C., 644, 200 S. E., 424; *Cole v. Koonce,* 214 N. C., 188, 198 S. E., 637.

The defendant's motion for judgment of nonsuit was properly denied. While defendant's evidence tended to throw a different light on the circumstances of this occurrence, and to relieve the defendant of the imputation of negligence, and also to show want of due care on the part of the plaintiff, the jury has accepted the plaintiff's view of what happened and found the determinative facts in her favor.

The defendant assigns error in the court's charge to the jury in respect to the statutory regulations of the speed of motor vehicles, for that in referring to G. S., 20-141, the court quoted the statute as declaring that a speed of 45 miles per hour (outside the corporate limits of city or town) was *prima facie* evidence that the speed was not reasonable and prudent, and was unlawful, whereas the statute gives that *prima facie* effect only to speed in excess of the limit stated. This was inferentially corrected by the trial judge in his statement to the jury shortly afterward that it was "for the jury to say under all the facts and circumstances whether or not a speed in excess of 45 miles an hour is an unlawful speed, taking into consideration all the circumstances surrounding the operation of the motor vehicle." And the court then quoted to the jury subsection 5 (c) of G. S., 20-141, which contains the provision that driving within the speed limits set out in the statute "shall not relieve

the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to other traffic." The defendant argues that the misstatement of the statute made by the court should be held substantial error in view of the conflicting evidence as to the speed of the bus, some witnesses putting it above, some below, and some at 45 miles per hour. However, we do not think this inadvertence on the part of the court was in any view harmful to the defendant. The speed of the bus in traversing the curve where the injury occurred was variously stated to be from 40 to 50 miles per hour, and the reference to speed of 45 miles per hour under the circumstances shown in this case would not seem to be important, in view of the modifying clause of the statute quoted. So material is the application of this clause to questions of liability arising out of violation of statutory speed regulations where special hazards or unusual circumstances are shown that in *Kolman v. Silbert,* 219 N. C., 134, 12 S. E. (2d), 915, it was held for error that the trial court in that case charged the jury as to the speed limits fixed by the statute without calling attention to the clause above referred to. In the opinion by *Justice Barnhill* it was said: "Whether the speed law is 45 miles per hour depends upon the circumstances at the time. . . . That part of sec. 103 (now G. S., 20-141), which fixes the rate of speed that is lawful when no special hazards exists, is secondary, facilitating proof, and must at all times be considered with proper regard to its relation to the primary and fundamental provisions of the section." We are unable to perceive any harmful result to the defendant consequent upon the court's reference to speed limits now complained of.

It may be noted that this action arose before the speed regulations of G. S., 20-141, were amended by Chap. 1067, sec. 12, Session Laws 1947.

We have examined the other exceptions noted by defendant to the court's instructions to the jury, and brought forward in the assignments of error, and find them without substantial merit.

After a careful examination of the entire record, we conclude that in the trial there was

No error.