**LIVINGSTON v. SEABOARD AIR LINE R. CO.**

**VARNER v. SEABOARD AIR LINE R. CO.**

**Nos. 2922, 2923.**

United States District Court
E. D. South Carolina, Columbia Division.

Aug. 28, 1952.

J. Strom Thurmond, Aiken, S. C., H. H. Edens, Columbia, S. C., for plaintiffs.

J. B. S. Lyles, John H. Lumpkin, Columbia, S. C., for defendant.

WYCHE, Chief Judge.

These two cases were consolidated for trial before me, without a jury. In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above causes, which are applicable alike to both cases except as otherwise specifically stated, as follows:

### Findings of Fact.

1. Plaintiff Livingston, a man sixty years of age, took his grandson Varner, a boy of nine, on a sight-seeing and educational trip to Washington. They left Columbia, South Carolina, the night of July 19, 1950, on a train of defendant, a common carrier of passengers, spent the following day and night in Washington, and started the return journey on the afternoon of July 21st, on a train that defendant operated between Richmond and Columbia.

2. Plaintiff Livingston had suffered two attacks or strokes in February and June, 1949, which hospitalized him for about fourteen and ten days, respectively. Thereafter, because of the impairment of his health, he retired from business activity as a furniture salesman.

3. Plaintiff Livingston had engaged in extensive sight-seeing activities with his grandson in Washington on July 20th, and after leaving Richmond on the train operated by defendant on July 21st, suffered an attack, or episode, the objective symptoms of which led a Catholic priest on the train, another passenger and the conductor to believe that he was seriously ill. Livingston appeared to grow progressively worse and a few minutes before the train reached Raleigh, North Carolina, he asked for a doctor and slumped into an apparently semi-conscious condition. He was unable to walk, to otherwise care for himself, or to talk intelligently.

4. The conductor had observed Livingston's condition when he lifted his ticket, at which time Livingston, having some difficulty in locating his ticket, told him that he had previously suffered two light strokes. The conductor, of some forty years' experience, knew that the law required him to render special care and attention to a passenger becoming ill or incapacitated during transit.

5. Pursuant to Livingston's request, the defendant upon arrival of the train at Raleigh called for a doctor and an ambulance. Livingston, unable to walk, was taken from the train at Raleigh with the assistance of three volunteers, placed in a wheel-chair and examined by a reputable doctor, who had been summoned by defendant. The doctor concluded that Livingston was seriously ill and should be taken to a hospital. Upon arrival at the hospital the same doctor, and another reputable doctor, agreed that Livingston should remain in the hospital temporarily.

6. The plaintiff Livingston had the appearance of being seriously ill; he appeared semi-conscious, in a semi-coma and incapacitated; the conductor acted reasonably and properly in concluding that the plaintiff Livingston was seriously ill and in arranging for his removal from the train for examination by a doctor at Raleigh, North Carolina; Livingston was lawfully and properly hospitalized at Raleigh, pursuant to advice of two reputable doctors, following an initial examination of him by one of the doctors at the depot; he was not unlawfully, forcibly or violently ejected from the train by the agents of the de-

fendant without his consent or against his will.

7. The conductor and station master, who were the employees of defendant charged with the legal duty of rendering special care and attention to Livingston, as a passenger becoming ill or incapacitated during transit, exercised reasonable and proper judgment in respect to Livingston, and no legal duty owed him by the defendant carrier was violated.

8. At the depot the Catholic priest offered to take the grandson, plaintiff Varner, to the Catholic orphanage with him, after which the grandson, accompanied by the priest voluntarily went along to the hospital with his grandfather, and later when the diagnosis made at the depot that Livingston required hospitalization was confirmed at the hospital, the grandson voluntarily accompanied Father Williams, the Catholic priest, in the ambulance to the Catholic orphanage.

9. It is not necessary for me to find whether the crime of sodomy was committed on the infant plaintiff as alleged in his complaint and in his testimony, because it appears that none of defendant's employees involved in this case had knowledge or notice of any fact, or had reason to anticipate or apprehend or suspect that the Catholic priest, in whose custody the grandson was placed, would have, or had, any intention or purpose to mistreat the infant in any way or to any extent, but on the contrary, they had the right to assume that he would receive the best of care and would not be mistreated in any manner whatsoever.

10. No request was made by Livingston or his grandson that the latter be carried unaccompanied to Columbia on the train, and no information was given the employees of defendant upon which they could decide that it would be safe and appropriate for the boy to continue by himself, especially when the train would arrive in Columbia at a late hour in the nighttime.

### Conclusions of Law.

1. Defendant, as a common carrier of passengers owed to both plaintiffs the duty to exercise the highest degree of practical care in the circumstances to transport them safely to their destination, so long as the carrier-passenger relation continued, but defendant was not an insurer of their safety.

2. If the conductor knew, or had good reason to believe, that the plaintiff Livingston was seriously ill and incapacitated it was his duty to render the plaintiff such extra care and attention as he reasonably could under the circumstances, with due regard to the primary duties of the defendant with reference to the train and other passengers thereon. The general duty included the duty to arrange for the attention of a doctor as soon as practical; the law did not empower the conductor as a layman to rely on his own diagnosis of plaintiff Livingston's illness.

3. A part of the duty owed by defendant to plaintiffs was that of protecting them against assault or injury by a third person if the responsible employees of defendant should reasonably have anticipated that any such danger threatened them. This duty did not extend to omniscience but only to such dangers as could reasonably have been foreseen or anticipated.

4. The responsible employees of defendant were under a duty in the circumstances to arrange for the temporary care and safety of the infant plaintiff at Raleigh according to the standards and foresight of reasonably prudent and intelligent men acting in good faith; but omniscience was not required of them in this respect.

5. Under the facts of this case, the defendant committed no wrongful act in its failure to transport the grandson, the infant plaintiff, to his destination.

### Opinion.

Under the law of North Carolina, by which I must be governed, where the relation of carrier and passenger exists, the carrier owes to the passengers the highest degree of care for their safety so far as is consistent with the practical operation and conduct of its business, but the liability of the carrier for injuries to a

passenger is based on negligence; the carrier is not an insurer of the safety of passengers; ordinarily, when the relationship of carrier and passenger is created it continues until the journey, expressly or impliedly, contracted for has been concluded, unless the passenger sooner terminates or relinquishes his right as such. White v. Chappell, 219 N.C. 652, 14 S.E.2d 843; Hollingsworth v. Skelding, 142 N.C. 246, 55 S.E. 212; Marable v. Southern R. Co., 142 N.C. 557, 55 S.E. 355; Briggs v. Durham Traction Co., 147 N.C. 389, 61 S.E. 373; Pruett v. Southern Railroad Co., 164 N.C. 3, 80 S.E. 65, 49 L.R.A., N.S. 810; Mills v. Atlantic Coast Line Railway Co., 172 N.C. 266, 90 S.E. 221. See also, Annotations 4 A.L.R. 1500, 31 A.L.R. 1202, 45 A.L.R. 297, 69 A.L.R. 980, 96 A.L.R. 727. 13 C.J.S., Carriers, § 566, p. 1075; Wallace v. Norfolk Southern R. Co., 174 N.C. 171, 93 S.E. 731. In an action for recovery of damages for injuries resulting from alleged actionable negligence, the plaintiff must show that there has been a failure on the part of the defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff under the circumstances in which they were placed, and that such negligent breach of duty was the proximate cause of the injuries complained of,—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed. White v. Chappell, 219 N.C. 652, 14 S.E.2d 843; Whitt v. Rand, 187 N.C. 805, 123 S.E. 84; Murray v. Atlantic Coast Line R. Co., 218 N.C. 392, 11 S.E.2d 326; Mills v. Moore, 219 N.C. 25, 12 S.E.2d 661.

■ A carrier is not required to furnish a nurse or attendant for a sick passenger, but "The authorities are all to the effect that a degree of attention beyond that due to ordinary passengers should be bestowed on those affected with a disability by which the hazards of travel are increased. The sick, the lame, children, and aged persons are entitled to more care and attention

from those in charge of a car than those in full possession of their strength and faculties." Anderson v. Atlantic Coast Line R. Co., 161 N.C. 462, 77 S.E. 402, 404; Clark v. Durham Traction Co., 138 N.C. 77, 82, 50 S.E. 518, 520.

■■ I can find no Supreme Court decision of North Carolina, and none has been called to my attention, that decides specifically what a conductor should do in the event a passenger becomes seriously ill while traveling upon a train with reference to securing medical aid, but the general rule is that where a passenger becomes ill or incapacitated while traveling, and such fact is known to the employees of the carrier, or it is so apparent that they are charged with knowledge of it, it is their duty to give him such care and protection, beyond that demanded under ordinary circumstances, as are reasonably practicable with the facilities at hand and consistent with the safe and proper conduct of the business and the carrier's duties to other passengers; where a passenger after starting on a journey, becomes sick or unconscious, it may become the duty of the carrier to remove him and leave him in competent hands so that he may receive proper care and attention until he is in a fit condition to resume his journey, or until he shall obtain the assistance necessary to take care of him to the end of his journey. 13 C.J.S., Carriers § 694, pp. 1293, 1294.

■ When the conductor on a train knows, or should know, that a passenger is too ill to remain on the car with safety, it is his duty, "if practicable, to remove him and put him in proper custody", 10 Amer. Jur., 185, § 1275; a conductor cannot rely upon his own diagnosis when a passenger becomes incapacitated but must take available and appropriate steps to get medical aid for him. Middleton v. Whitridge, 213 N.Y. 499, 108 N.E. 192, Ann.Cas.1916C, 856.

■ The law holds men liable only for the consequence of their acts which they can and should foresee and by reasonable care and prudence provide for. The law does not require omniscience, Gant v. Gant,

197 N.C. 164, 148 S.E. 34; Fore v. Geary, 191 N.C. 90, 131 S.E. 387, or the anticipation of "whatsoever shall come to pass"; the legal principles by which individuals are held liable for their negligent acts "impose no such farseeing and all-inclusive duty". Beach v. Patton, 208 N.C. 134, 179 S.E. 446, 447.

■ "The general rule of law is that if between the negligence and the injury there is the intervening crime or willful and malicious act of a third person producing the injury, but that such was not intended by the defendant, and could not have been reasonably foreseen by it, 'the causal chain between the original negligence and the accident is broken.'" Johnston v. Atlantic Coast Line R. Co., 183 S.C. 126, 190 S.E. 459, 462; Chancey v. Norfolk & W. R. Co., 174 N.C. 351, 93 S.E. 834, L.R.A. 1918A, 1070; Atlanta & C.A.L. R. Co. v. Green, 279 U.S. 821, 49 S.Ct. 350, 73 L. Ed. 976; Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299; St. Louis-San Francisco R. Co. v. Mills, 271 U.S. 344, 46 S.Ct. 520, 70 L.Ed. 979; Atlantic Coast Line R. Co. v. Southwell, 275 U.S. 64, 48 S.Ct. 25, 26, 72 L.Ed. 157.

As to the grandfather plaintiff, the conductor was convinced that he was seriously ill and immediately upon arrival at the station in Raleigh, North Carolina, had the station-master to call a doctor and an ambulance. The grandfather was taken from the train with the assistance of volunteers and placed in a wheelchair and examined by the doctor who had been summoned by the defendant. After the doctor concluded that the grandfather was seriously ill and should be taken to a hospital, the defendant sent the grandfather to the hospital where the same doctor and another reputable doctor agreed that he should remain in the hospital temporarily.

■ It is my opinion that in so acting the defendant complied with the requirements of the law under the facts in this case.

■ As to the infant plaintiff, it is my opinion that the responsible employees of the defendant were under a duty under the circumstances here to arrange for the temporary care and safety of the infant plaintiff at Raleigh according to the standards and foresight of reasonably prudent and intelligent men acting in good faith. In the case of Atchison, T. & S. F. R. Co. v. Weber, 1885, 33 Kan. 543, 6 P. 877, 885, the Court said, with reference to an incapacitated adult on account of illness, "We think that if the railway company carefully and prudently removed him from the train and promptly placed him in the care of the overseer of the poor, who received and took charge of him, under the facts of this case, it has exercised that reasonable care and diligence in making provisions for him that the law requires". The proposal of the priest, which the station-master accepted, was that the priest would take the infant plaintiff along with the grandfather to the hospital and thence to the Catholic orphanage for safe keeping. The boy was accepted at about eleven o'clock p. m. as an overnight guest by the Superintendent of the Catholic orphanage. It is claimed by the plaintiff that the assault upon the infant plaintiff was committed by the priest some hours later. The employees of the defendant, in my opinion, exercised that reasonable care and diligence that the law requires when they arranged for the temporary care and custody of the infant plaintiff, and in so doing they performed their duty according to the standards and foresight of reasonably prudent and intelligent men acting in good faith. None of defendant's employees had reason to anticipate or apprehend or suspect that the Catholic priest had any intention or purpose to mistreat the infant plaintiff in any way, or to any extent, but on the contrary they had the right to assume that he would receive the best of care and attention and would not be mistreated in any manner whatsoever. The assault claimed by the plaintiff is a felony under the North Carolina statute. If it was committed, it was an intervening crime not reasonably foreseeable by the defendant.

It is my opinion that there is no liability on the part of the defendant in either case, and that judgment should be entered for the defendant in both cases, and

It Is So Ordered.